**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BRANDON ROBERTS,          *

Plaintiff,                *

v.                      *        Civil Action No. ELH-20-1843

C.O. II YAIDER, WILLIAM MILLER, and  *
KIMBERLY STEWART,
                        *
Defendants.
                        *

                       ***

**MEMORANDUM OPINION**

The self-represented plaintiff, Brandon Roberts, is a Maryland prisoner confined at North Branch Correctional Institution ("NBCI"). He initiated this civil rights action by filing a Complaint, pursuant to 42 U.S.C. §1983 against C.O. II Yaider; Shift Commander William Miller; and Hearing Officer Kimberly Stewart. ECF 1. The Complaint was supplemented on three occasions with verified submissions. ECF 5, ECF 10, ECF 11.

Roberts brings claims for violations of the First Amendment, the Fourth Amendment, the Fifth Amendment, and the Fourteenth Amendment. ECF 1 at 1; ECF 5 at 5-7. In particular, he asserts that his rights were violated in connection with an incident in the cafeteria that took place on December 21, 2016, when Yaider improperly ordered him to sit at a specific table. ECF 5 at 2-3. He claims that when he left the cafeteria there was another incident with officers and he was ultimately cuffed, strip searched, and left in segregation, without clothing. *Id.* at 3. He then received a disciplinary report based on false allegations, in retaliation for the events in the cafeteria. *Id.* at 3-4.

In August of 2022, defendants Yaider, Miller, and Stewart moved to dismiss or for summary judgment (ECF 16), supported by a memorandum (ECF 16-1) (collectively, the

"Motion"). They have also submitted several exhibits, including the declarations of Yaider (ECF 16-3); Miller (ECF 16-5); Stewart (ECF 16-6); and Robin Wolford, Deputy Director of the Inmate Grievance Office (ECF 16-9).

Defendants assert that the Complaint was untimely filed. They also argue that Roberts has failed to exhaust administrative remedies. And, they argue that Roberts fails to establish a violation of his constitutional rights.

As discussed below, Roberts was notified of his right to respond to the Motion. ECF 17. But, he has not done so. *See* Docket. The Motion is ripe for disposition.

Upon review of the record, exhibits, and the applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6. (D. Md. 2021). For reasons that follow, I shall construe the Motion as one for summary judgment and grant it in favor of defendants.

## I. Background

### A. Procedural History

A partial, unsigned Complaint was received by this Court from Roberts on June 17, 2020. ECF 1. The certificate of service, which was signed by plaintiff, reflects service of the Complaint on the Clerk of Court, via mail, on June 10, 2020. ECF 1-2. Roberts also filed a letter addressed to the Clerk of the Court, dated June 10, 2020. ECF 1-1. The partial Complaint is titled "Verified Civil Complaint" but, due to the lack of a signature, it was not verified.

By Order dated July 24, 2020 (ECF 4), Roberts was directed to supplement the incomplete Complaint and to provide a signed copy of the complete Complaint. Roberts filed a verified supplement that was received by the Court on August 31, 2020. ECF 5.

In an Order dated September 25, 2020 (ECF 6), Roberts was directed to supplement the Complaint to provide additional facts to support his claims. *Id.* at 4. I also noted that the facts

alleged by Roberts occurred well over three years before the filing of the Complaint. *Id.* at 2-3. Therefore, Roberts was directed to supplement his Complaint to state why he may be entitled to equitable tolling of the relevant statute of limitations. *Id* at 4..

In an apparent effort to clarify dates pertinent to the statute of limitations, on October 14, 2020, Roberts filed a verified "Motion For Clarification And/Or Reply To Court's September 25, 2020, Order in Part" ("Clarification Motion"). ECF 8. He claimed that limitations was "tolled up until, and including, June 14, 2017 . . . ." *Id.* at 3. Roberts said, in part, *id.* at 2: "Accordingly, the final administrative decision in this case was entered on June 14, 2017." *Id.* at 2. In addition, he claimed that he mailed the suit on June 10, 2020, but it was sent back to him. *Id.* He asserted that his mail was delayed by prison officials in "a blatant attempt to stymie or obstruct" his action. *Id.*

Further, to support his assertion that the final administration decision was entered on June 14, 2017, Roberts stated: "IGO Decision attached hereto." *Id.* But, he actually submitted a copy of a request for administrative remedy ("ARP"), dated June 13, 2020, pertaining to an issue with the mailing of the Complaint in this action, not the cafeteria incident. *See* ECF 8-1.

The ARP is noted to have been received by the ARP Coordinator at NBCI on June 15, 2020. *Id.* In the ARP, Roberts stated that he attempted to mail his Complaint to the Court on June 10, 2020, but on June 12, 2020, the mail was returned to him for his state identification ("SID") number. *Id.* at 1. The ARP was denied on July 8, 2020, with the response noting that both the SID number and postage were missing from the mailing. *Id.*

Roberts also submitted a copy of the envelope he used for the mailing that was returned to him in connection with the filing of this suit.  ECF 8-1 at 3.  It is marked "Needs Sid #" and does not have postage affixed to it.  *Id.*

As noted, on June 17, 2020, the Court received the incomplete, unsigned Complaint from Roberts.  ECF 1.  The envelope containing the suit is docketed at ECF 1-3.  It contains postage and a postmark of "6/15/2020".  *Id.*

Roberts's Clarification Motion was denied by Order of April 1, 2021, because he failed to supplement the Complaint, as directed.  ECF 9. However, Roberts was again provided with an extension of time to supplement the Complaint, in conformance with the Order of September 25, 2020 (ECF 6).  *Id.*  Roberts then filed two additional supplements to the Complaint.  ECF 10, ECF 11.  Thereafter, the Court ordered service on the defendants.  ECF 12.

Defendants filed their Motion on August 25, 2022.  ECF 16.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on August 26, 2022, the Court informed Roberts that the failure to file a response in opposition to the Motion could result in dismissal of his Complaint.  ECF 17.

On October 5, 2022, Roberts requested an extension of time to respond to the Motion. ECF 18.  I granted plaintiff's extension motion on October 20, 2022.  ECF 19.  I set a due date of November 15, 2022 for the response.  *Id.*

The Court received Roberts's "Notice Of Late Filing of Opposition to Defendants' Motion to Dismiss" on November 17, 2022.  ECF 20.  Roberts stated that the Court would have the pleadings "a few days late." *Id.* at 2.  As of this date, however, no response to the Motion from Roberts has been received, and the time to do so has expired.

**B. Factual Summary**

Roberts's allegations emanate from an encounter with C.O. II Yaider on December 21, 2016, when Yaider allegedly ordered Roberts to sit at a specific table in the cafeteria. ECF 5 at 2-3. Roberts asserts that he refused because the table was full, at which time Yaider had another prisoner leave the table so that Roberts could sit in that seat. *Id.* Roberts states he moved to the designated table to avoid further confrontation with Yaider. *Id.* at 3. According to Roberts, Yaider belligerently confronted him again as Roberts was leaving the cafeteria, and then had him placed in handcuffs and escorted to the "segregation storage dept. cage," and also threatened to have him locked in segregation. *Id.* at 3.

Further, Roberts alleges that he was then unlawfully strip searched, in retaliation for ignoring Yaider, and his clothing was not returned after the search, leaving him naked in the holding cage for about twenty minutes. *Id.* The officers who conducted the search are not named, but plaintiff claims that they attempted to "dehumanize" plaintiff. *Id.*

Roberts was then "let go" to return to his housing unit, and Yaider issued a disciplinary report for "interference with the performance of staff duties, disobeying an order and disrespect or use of vulgar language." *Id.* Roberts claims the disciplinary report was maliciously issued in retaliation for Roberts's actions in the cafeteria, and that it contains false information. *Id.* at 3-4. Additionally, plaintiff claims that Yaider fabricated the disciplinary report in retaliation for plaintiff "expressing his rights, by avoiding a conflict or altercation with other prisoners." *Id.* at 4.

Roberts asserts that neither Miller, the investigating officer, nor Stewart, a hearing officer, properly investigated Yaider's report. *Id.* at 2, 4. Further, he states that he requested

video surveillance tapes and witnesses, without success.  ECF 10 at 3.  Roberts states he was found guilty of disobeying a direct order and using vulgar language.  ECF 5 at 4.  He also avers that the ticket was later reduced to an incident report and placed in his prison file[s] "for use against him in any unforeseen future incidents."  ECF 10 at 3.

Defendants filed with their Motion a copy of an ARP Roberts filed pertaining to the incident in the cafeteria on December 21, 2016. ECF 16-8. The ARP is dated January 3, 2017, and receipt thereof is noted to be January 8, 2017 and/or January 9, 2017.  *Id.* at 1. The ARP complains of defendant Yaider's action in the cafeteria on December 21, 2016, pertaining to Roberts's seat assignment.  The ARP details actions taken by Yaider in the cafeteria and in the "storage room cage" where Roberts was taken after exiting the cafeteria.  *Id.* at 1-2.  Further, Roberts's ARP states that "other officers" searched him and failed to return his clothing for "over 20 minutes."  *Id.* at 2.  Roberts also states that he was "ruffed-up while being escorted in hand-cuffs by Yaider, who then falsified a ticket as a retaliatory method to cover for his savage behavior."  *Id.*

Of import here, the ARP was denied by the Warden on January 18, 2017.  ECF 16-8 at 1.  Roberts was advised of his right to appeal.  *Id.*

With their Motion, defendants also submitted the Declaration of Robin Woolford, Deputy Director of the Inmate Grievance Office ("IGO") of the Maryland Department of Public Safety and Correctional Services ("DPSCS") dated August 22, 2022.  ECF 16-9.  Woolford avers that her records indicate that Roberts did not file a grievance related to the ARP received January 8, 2017.  *Id.* at 1-2.  She also states that no appeals were filed by Roberts pertaining to "any incident" in December 2016.  *Id.*  at 2.

Stewart submitted a Declaration pertaining to Roberts's hearing.  ECF 16-6.  She states that she was the Hearing Officer assigned to Roberts's Rule Infractions.  According to Stewart, no evidence or testimony was presented at the hearing because Roberts entered into a plea agreement with the Facility Representative prior to the hearing.  *Id.* at 1.  Further, she states that the Hearing Officer is not involved in these discussions and she was unaware that such discussions had taken place.  *Id.* at 1-2.

Stewart was later advised, and then placed on the record, that a plea agreement had been reached and that the charged resolved by informal resolution.  *Id.* at 2.  The resolution was that one charge was dismissed, and the remaining two charges were reduced to an Incident Report.  *Id.*  An Incident Report is not considered a disciplinary conviction and does not result in a guilty finding or a sanction.  *Id.* As such, no sanction was imposed on Roberts.  *Id.*  In addition, Stewart states that there are no collateral consequences to an Incident Report, and it is not considered a prior conviction for purposes of progressive discipline in future disciplinary hearings.  *Id.*

## II.  Standard of Review

### A.

As noted, the Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger* 510 F.3d at 450.  However, under Rule

12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt*, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D. Md. 2005). Roberts was provided such notice by the defendants. He also received notification from the Clerk of defendants' dispositive filing and the opportunity to reply with exhibits and declarations. ECF 17. Roberts failed to respond.

Nevertheless, summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir.

2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,* 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), aff'd, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Roberts has not filed an affidavit under Rule 56(d), nor has he filed a response to defendants' motion or requested discovery. Further, defendants have provided Roberts with a detailed accounting of events and the timeline relevant to his claims. Thus, the Court is satisfied that it

is appropriate to address defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

## B.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has  clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms,  this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

There is a genuine dispute as to material fact "if the evidence is such that a reasonable jury  could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d  199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian*

*Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  And, the Court must view the evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in his favor, "without weighing the evidence or  assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639,  645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625,  628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*,  720 F.3d 169, 173 (4th Cir. 2013).

Notably, "to avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial.  Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment."  *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997).  In other words, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."  *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

Critically, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

That said, "a party's 'self-serving opinion ... cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 433 (4th Cir. 2004)). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

But, if testimony is based on personal knowledge or firsthand experience, it can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 Fed. App'x 209, 212 (4th Cir. 2017). Indeed, "'a great deal

13

of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, ___ F. 4th ___, 2022 WL 2901043, at *9 (4th Cir. July 22, 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 585–86. "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III.  Discussion

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56.  As noted, I have determined to construe the Motion under Rule 56.

Defendants argue that (1) Roberts has failed to exhaust administrative remedies; (2) Roberts's claims are barred by the statute of limitations; and (3) Roberts fails to state a constitutional claim.

### A.  Exhaustion

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88.

This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Id.* at 91 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original).  But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies.  42 U.S.C. § 1997e(a).  The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating: "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."  *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him are no longer available.  *See Woodford*, 548 U.S. 89.  Therefore, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively.  *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA."  In particular, it rejected a "special circumstances" exception to the exhaustion requirement.  *Id.* at 637.  But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'"  *Id.* at 635-36.  And, "an administrative remedy is

not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

The DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2017 Repl. Vol.), §§ 10-201 *et seq.* of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC]. . . ." C.S. § 10-206(a).

In Maryland, there is an established administrative remedy procedure that applies to all Maryland prisons. COMAR 12.07.01.05B 2.28.01. Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a

grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee.  C.S. § 10-206(a).

When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.  However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO.  *See* C.S. § 10-206(b).

The ARP process consists of multiple steps.  For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[1] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal

---

[1] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

19

filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing. . . ."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code § 10-206(a)(1) of the State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)(2),(c); COMAR 12.07.01.10(B).

The statute provides for judicial review.  C.S. § 10-210.  But, "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in Title 10, Subtitle 2 of the Correctional Services Article.  C.S. § 10-210(a).

Defendants assert that Roberts failed to exhaust his administrative remedies and further that the ARP that he did file did not address the disciplinary claims he now brings.  ECF 16-1 at 9-11. They provide the Declaration of the Deputy Director of the IGO as well as the ARP document

20

to support their assertion. ECF 16-8, ECF 16-9.   Defendants met their initial burden of demonstrating the absence of a genuine issue of material fact.  *See Bouchart*, 346 F.3d at 525 citing *Celotex Corp.*, 477 U.S. at 323. The burden then shifted to Roberts to demonstrate the existence of a dispute concerning a material fact. *See Bouchart*, 346 F.3d at 525 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87).

Roberts did not respond to defendants' Motion.  Therefore, he has failed to demonstrate the existence of a material factual dispute.  The sole reference Roberts makes to exhausting his administrative remedies is in the context of his Clarification Motion, in which he states: "Accordingly, the final administrative decision in this case was entered on June 14, 2017."  ECF 8 at 2.  At no point does Roberts provide facts or documentation to illuminate this conclusory allegation, or to dispute defendants' assertion, which includes documentation of the ARP that plaintiff filed, and the Declaration of Woolford, verifying that Roberts failed to exhaust the administrative process.

Viewing the evidence in the light most favorable to Roberts, there is no way to avoid the conclusion that he has presented nothing more than a conclusory assertion, and has not "set forth specific facts showing that there is a genuine issue for trial."  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d at 525 (citations omitted).  He has not presented conflicting evidence, such as competing affidavits or written documentation. *See CTB, Inc*., 954 F.3d at 658-59.

In sum, after defendants filed their Motion, Roberts failed to present any conflicting evidence.  This is insufficient to defeat defendants' Motion.

Defendants' Motion will be granted on the basis that Roberts failed to exhaust his administrative remedies.

## B.  Statute of Limitations

Defendants also claim that the Complaint was untimely filed.  ECF 16-1 at 8-9.  Even if the suit were timely filed, it would fail for failure to exhaust.  However, in the alternative, I shall assume that exhaustion does not bar the suit, and I shall address the contention.

Section 1983 does not contain a statute of limitations. To determine whether a § 1983 claim was timely filed, courts look to the statute of limitations from the most analogous state-law cause of action.  *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014); *see also* 42 U.S.C. § 1988(a) ("[I]n all cases where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies ... the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause[.]").

A suit filed pursuant to 42 U.S.C. § 1983 constitutes a personal injury action.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. Md. Code (2020 Repl. Vol.),  § 5-101 of the Courts and Judicial Proceedings Article ("C.J.").

"Limitations statutes ... are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy."  *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 85, 904 A.2d 511, 526 (2006); *see Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983). In Maryland, "[a]s a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the

statutory time limit for filing the suit." *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).

Although the Maryland statute of limitations applies, the matter of when a cause of action has accrued under § 1983 is a federal question. *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975)); *see also McDonough v. Smith*, ––– U.S. ––––, 139 S. Ct. 2149, 2155 (2019). "An accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough*, 139 S. Ct. at 2155 (quoting *Manuel v. Joliet*, 580 U.S. 357 (2017)).

A claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim*, 64 F.3d at 955 (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)); *see Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (stating that a cause of action accrues when the plaintiff "has actual or constructive knowledge" of the claim). But, accrual cannot occur until the plaintiff has (or should have) "possession of the critical facts that he has been hurt and who has inflicted the injury." *Kubrick*, 444 U.S. at 122 (discussing discovery rule in the context of the Federal Tort Claims Act, which requires notice to the government "within two years after such claim accrues"); *see also Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990) (en banc) ("The clear import of *Kubrick* is that a claim accrues ... when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury."); *Gilbert v. United States*, 720 F.2d 372, 374 (4th Cir. 1983). However, "the answer is not always so simple." *McDonough*, 139 S. Ct. at 2155. "Where, for example, a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *Id.*

23

Maryland law concerning accrual is largely consistent with federal law.  Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. C.J. § 5-101; *see  Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011). Ordinarily, "'the question of accrual in § 5-101 is left to judicial determination,' unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Poole*, 423 Md. at 131, 31 A.3d at 236 (citation omitted); *see Bank of N.Y. v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was file); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

Nevertheless, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," the so-called discovery rule is sometimes used to determine the date of accrual. *See Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973. "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 167, 857 A.2d 1095, 1104 (2004).

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.,* 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing  *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 444, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012).

Notably, "[t]his standard ... does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.' " *Dual Inc.*, 383 Md. at 167-68, 857 A.2d at 1104 (citing *Am. Gen. Assurance Co. v. Pappano*, 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *Doe v. Archdiocese of Wash.*, 114 Md. App. 169, 188-89, 689 A.2d 634, 644 (1997)).

A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and ... a diligent investigation would have revealed that the plaintiffs were victims of ... the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d at 1104 (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155, 1159 (1988)) (alterations in original). Inquiry notice must be actual notice, either express or implied. *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677, 681 (1981).  In Maryland, "[c]onstructive notice or knowledge will not suffice for inquiry notice." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see Poffenberger*, 290 Md. at 637, 431 A.2d at 681.

In this case, defendants contend that, because Roberts's Complaint was not filed until June 17, 2020, his claims concerning the incident on December 21, 2016, are time barred.  ECF 16-1 at 8-9.  Roberts, on the other hand, seems to state that his filing was timely because "the final administrative decision in this case was entered on June 14, 2017"; he is entitled to tolling of the statute of limitations during the period in which he was exhausting administrative remedies; and he attempted to file the suit on June 10, 2020.  ECF 8.

Defendants overlook that the state statute of limitations applicable to the filing of § 1983 complaints is subject to equitable tolling during the time a prisoner is exhausting administrative remedies. *Battle v. Ledford*, 912 F.3d 708, 719–20 (4th Cir. 2019).  They fail to account for the time period that Roberts was engaged in the process of exhausting the grievance procedure.

However, on the record before the Court, that period ended on January 18, 2017, when the ARP was rejected by the Warden, and no appeal was taken by Roberts. *See* ECF 16-8 at 2; ECF 16-9, ¶¶ 4, 5.

As noted, Roberts's incomplete Complaint was received by this Court on June 17, 2020. *See* ECF 1.  However, Roberts attempted to mail the suit on June 10, 2020.  And, he submitted an ARP dated June 13, 2020.  ECF 8-1.  But, that ARP is of no moment, because it pertains to the issue of the mailing of the Complaint in this action.  ECF 8-1. In the ARP, Roberts states that he first attempted to mail his Complaint to the Court on June 10, 2020, but on June 12, 2020, the mail was returned to him because it needed his SID number.  *Id.* at 1. Eventually, on June 17, 2020, the Court received the incomplete, unsigned Complaint from Roberts, indicating that postage was affixed on June 15, 2020.  ECF 1-3.

I assume the truth of Roberts's allegations that he mailed the suit on June 10, 2020. Even so, and even assuming that exhaustion does not bar the suit, the suit was not timely filed. Plaintiff's efforts at exhaustion as to the cafeteria matter ended on January 18, 2017, when the Warden rejected the ARP, finding it "without merit." ECF 16-8 at 1. Roberts did not appeal. Therefore, his claim accrued on that date.  None of the June 2020 dates on which Roberts alleges he attempted to file his Complaint are within the three year statute of limitations, even accounting for tolling while Roberts attempted to exhaust his administrative remedies.  Using any of the June 2020 dates, the Complaint was filed approximately five months too late.[2]

---

[2] Application of the prisoner mailbox rule does not alter the outcome here due to the extreme lateness of the mailing of the Complaint.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (a pro se litigant's legal papers are considered filed upon "delivery to prison authorities, not receipt by the clerk"); *see also Lewis v. Richmond Police Department*, 947 F.2d 733, 734-35 (4th Cir. 1991); *United States v. Dorsey*, 988 F. Supp. 917, 919-920 (D. Md. 1998).

In other words, the Warden denied the APR on January 17, 2017.  And, because Roberts did not seek review of that decision, the claim accrued on that date.  Therefore, in order to be timely, Roberts had to file suit in January of 2020, not June of 2020.

Defendants' Motion will also be granted on the basis that Roberts's claims are time barred.[3]

## VI.  Conclusion

For the foregoing reasons, I shall grant summary judgment in favor of defendants.  An Order follows.

Date:  December 15, 2022                             _____/s/_____
                                                    Ellen L. Hollander
                                                    United States District Judge

---

[3] As a result, the Court need not address the remaining claims raised by defendants.

27